Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
dgerrard@gerrard-cox.com
John M. Langeveld , Esq.
Nevada Bar No. 11628
jlangeveld@gerrard-cox.com
**GERRARD COX LARSEN**
2450 St. Rose Pkwy., Suite 200
Henderson, Nevada 89074
(702) 796-4000 (telephone)
(702) 796-4848 (facsimile)
*Attorneys for* LIVELIFE, LLC, a Wyoming limited liability company

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>AARON AUGUSTIN AFFLALO,<br><br>Debtor. | Case No.    BK-S-19-12086-ABL<br><br>Involuntary Chapter 7 |
| LIVELIFE, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BAY POINT CAPITAL PARTNERS, LP, a Delaware limited partnership, AUGUSTIN PARIS, LLC, a Nevada limited liability company; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | **Adversary Case No.**<br><br><br><br>**ADVERSARY COMPLAINT** |

## ADVERSARY COMPLAINT

COMES NOW Plaintiff LiveLife, LLC, a Wyoming limited liability company, by and through its attorneys, GERRARD COX  LARSEN, and complains, alleges and avers as follows:

/ /

/ /

**PARTIES**

1. LIVELIFE, LLC ("Plaintiff" or "LiveLife") is organized in the State of Wyoming, and holds an interest in that certain real property at issue in this case, which is located in Clark County, Nevada.

2. BAY POINT CAPITAL PARTNERS, LP ("Bay Point") is a Delaware limited partnership, and holds an interest in that certain real property at issue in this case, which is located in Clark County, Nevada.

3. Upon information and belief, Defendant AUGUSTIN PARIS, LLC ("AP LLC") is a Nevada limited liability company, doing business in Nevada. ARRON AUGUSTIN AFFLALO is the debtor in the above captioned bankruptcy ("Debtor" or "Afflalo") and is the sole manager of AP LLC.

4. The true names of Defendants DOES I through X, and ROE BUSINESS ENTITIES I through X, inclusive, are unknown to Plaintiff at this time, and therefore Plaintiff brings suit against them by the foregoing fictitious names. Plaintiff is informed and believes, and upon such alleges, that each of the Defendants designated as a DOES and ROE BUSINESS ENTITIES, is responsible in some manner for the events and happenings referred to in this Adversary Complaint. Plaintiff will ask leave of this Court to amend this Adversary Complaint and insert the true names and capacities of said the DOE and ROE Defendants, inclusive, when the same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join these Defendants in this action.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and pursuant to one or any combination of the following: 11 U.S.C. §§ 363, Bankruptcy Rule 7001 and Local Rule 9014, Local Rules of Practice, United States District Court, District of Nevada. Plaintiff LiveLife believes and alleges that the claims for relief are "core" proceedings subject to determination by this Court pursuant to 28 U.S.C. § 157(b)(2)(K). In the event any claim for relief is not a core proceeding, Plaintiff hereby consents to determination of these claims by this Court.

6. Venue is proper in this Court and in this District pursuant to 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

7. On or about June 26, 2014, Afflalo filed Articles of Organization to form Augustin Paris, LLC, with Affalo acting as the sole manager and member of AP LLC.

8. On or about July 15, 2014, Afflalo executed that certain Operating Agreement for AP LLC showing Arron A. Afflalo, Trustee of the D AND A Trust, dated July 15, 2014 ("Trust"), as the 100% Member of the LLC.

9. On or about February 17, 2017, AP LLC obtained title to that certain property identified as 16 Soaring Bird Court, Las Vegas, NV 89135 (APN 164-14-313-003) ("Property") through a Grant, Bargain, Sale Deed from Steven N. Chu and Sylvia Eng Chu, which was recorded as Inst. No. 20170217-0000839 in the Official Records of Clark County, Nevada.

10. On or about July 6, 2017, a Deed of Grant for the Property (dated June 27, 2017) from Augustin Paris, LLC, Grantor, to Arron A. Afflalo Trustee of the D and A Trust, Grantee, was recorded as Inst. No. 20170706-0001559 in the Official Records of Clark County, Nevada.

11. On or about July 11, 2017, a Deed of Grant Deed for the Property (dated June 27, 2017) from Arron A. Afflalo Trustee of the D and A Trust, Grantor, to Aaron Afflalo, Grantee, was recorded as Inst. No. 20170711-0000980 in the Official Records of Clark County, Nevada.

12. On or about July 11, 2017, Afflalo obtained a loan in the amount of $2,335,000.00, from BOFI Federal Bank ("BOFI") (the "BOFI Loan").

13. The BOFI Loan was secured by a deed of trust recorded against the Property on July 11, 2017 as Instrument No. 20170711-0000981 in the Official Records of Clark County, Nevada (the "BOFI Deed of Trust").

14. Thereafter, on or about January 19, 2018, Afflalo obtained another loan using the Property as collateral, in the amount of $3,930,000.00, from Bay Point Capital Partners, LP (the "Bay Point Loan").

15. The Bay Point Loan was secured by a deed of trust recorded on January 19, 2019, in a 2nd priority position against the Property (behind the 1st priority BOFI Deed of Trust), as

Instrument No. 20180119-0002005 in the Official Records of Clark County, Nevada (the "Bay Point Deed of Trust").

16. Thereafter, during or about August, 2018, Afflalo, decided to refinance the BOFI Loan obligation, and to that end, applied for a refinancing loan in the amount of $3,150,000.00 from LiveLife (the "LiveLife Loan").

17. In order to obtain the LiveLife Loan and as a condition of closing the loan transaction escrow and obtain funding of the loan, Afflalo was required to: (i) convey the Property to AP LLC through the escrow established at JetClosing.com ("Escrow Agent"); and (ii) have AP LLC convey a first priority deed of trust to LiveLife as security for the LiveLife Loan.

18. It was the intention of LiveLife, Afflalo, and AP LLC, that the LiveLife Loan be secured by a first priority deed of trust against the Property, and LiveLife made the receipt of a first priority lien a condition to closing the loan transaction.

19. LiveLife specifically instructed the Escrow Agent that the LiveLife Loan escrow was not to close until the Escrow Agent had confirmed that all prior liens had been cleared or subordinated prior to closing, or would be paid through the closing of the escrow using the LiveLife Loan proceeds, and further instructed the Escrow Agent that it could only close the loan escrow when the LiveLife security instrument was recorded in a first priority position.

20. LiveLife received a title report from the Escrow Agent which disclosed (i) the BOFI Deed of Trust as a first priority lien against the Property, and (ii) the Bay Point Deed of Trust as a second priority lien against the Property. LiveLife instructed the Escrow Agent to pay the BOFI Deed of Trust in full through the closing of the LiveLife Loan escrow so that the LiveLife deed of trust would receive the first priority position of the BOFI Loan and BOFI Deed of Trust being paid and discharged through the LiveLife Loan escrow.

21. Both Afflalo and AP LLC promised to repay the LiveLife Loan and intended and promised that the LiveLife Loan would be secured by a first priority deed of trust (the priority of the BOFI Deed of Trust being discharged).

22. In order to ensure that the LiveLife Loan would be secured by a first priority deed of trust against the Property and as a condition of LiveLife providing its loan, LiveLife and Afflalo

obtained an agreement from Bay Point that the Bay Point Loan and Bay Point Deed of Trust would be subordinated to the new LiveLife Loan as the Bay Point Loan was not intended to be paid off through the LiveLife Loan escrow closing.

23. On or about August 31, 2018, Bay Point Capital Partners, LP, as the "Subordinate Lender", Arron Afflalo, as the "Property Owner", and LiveLife LLC, as the "Senior Lender", executed that certain Subordination Agreement ("Subordination Agreement"), pursuant to which Bay Point subordinated the Bay Point Loan and the Bay Point Deed of Trust to the deed of trust that would be recorded against the Property in favor of LiveLife to secure a new loan in the amount of $3,150,000.00 ("LiveLife Deed of Trust"). The Subordination Agreement refers to the LiveLife Deed of Trust as the "Superior Deed of Trust". The Subordination Agreement refers to the LiveLife Loan as the "Senior Lender Note" and refers to LiveLife as the "Senior Lender".

24. The Subordination Agreement, executed by Afflalo as the Property Owner, expressly states that the Property Owner has executed or is about to execute a deed of trust in favor of LiveLife (identified therein as the "Superior Deed of Trust") and states:

> That the Superior Deed of Trust securing the Senior Lender Note in favor of Senior Lender, and any renewals or extensions thereof, shall under the terms and conditions hereof **be and remain at all time a lien or charge on the property therein described**, prior and superior to the Subordinate Deed of Trust lien in said order of priority.

(the "LiveLife Deed of Trust Ratification Clause").

25. Through the Subordination Agreement, Afflalo as the Property Owner, created a lien against the Property in favor of LiveLife and/or ratified and affirmed the LiveLife Deed of Trust as a first priority lien against the Property.

26. Further, by its terms, the Subordination Agreement identifies Bay Point Capital as the "Subordinate Lender", the Bay Point Loan note as the "Subordinate Lender Note", and the Bay Point Deed of Trust as the "Subordinate Deed of Trust". Bay Point expressly agreed to subordinate its lien and loan to the LiveLife Loan and Deed of Trust.

27. The Subordination Agreement was executed by (i) Gregory Jacobs, Manager of Bay Point Advisors, LLC, General Partner of Bay Point Capital Partners, LLC, (ii) M. Grossman, as the sole member of LiveLife LLC, and (iii) Arron Afflalo, as owner of the Property.

5

28. On or about September 5, 2018, Afflalo, in his capacity as manager for AP LLC, executed a Deed of Trust, Assignment of Leases and Rents, Fixture Filing and Security Agreement (i.e., the LiveLife Deed of Trust) for the purpose of memorializing the agreement set forth in the Subordination Agreement (whereby Afflalo ratified the LiveLife Deed of Trust as a first priority lien against the Property in accordance with the terms stated in the deed of trust).

29. On or about September 5, 2018, as additional security for the LiveLife Loan, Afflalo, in his individual capacity, executed that certain Guaranty (the "Guaranty"), through which Afflalo agreed to guarantee the obligations under the LiveLife Loan and LiveLife Deed of Trust.

30. On or about September 6, 2018, the Livelife Loan escrow for Loan No. 70170022 closed, and $2,331,057.46 of the loan proceeds were disbursed to BOFI to pay off the full balance owed on the BOFI Loan and provide a first priority lien position to LiveLife. This payment satisfied an obligation of Afflalo to BOFI and LiveLife caused this payment to BOFI for the purpose of protecting its own first priority lien interest in Property. This payment fully satisfied the BOFI Loan. After all closing costs, title insurance fees, and other costs were deducted, the remaining $506,930.29 in loan proceeds was then disbursed via a check to AP LLC.

31. On September 7, 2018, the LiveLife Deed of Trust in the amount of $3,150,000.00 was recorded against the Property as Instrument No. 20180907-00002954 in the Official Records of Clark County, Nevada.

32. On September 7, 2018, the Subordination Agreement was also recorded against the Property as Instrument No. 20180907-0000955 in the Official Records of Clark County, Nevada.

33. The Escrow Agent mistakenly failed to record a deed at the close of the LiveLife Loan escrow transferring the Property from Afflalo to AP LLC ("Missing Deed"). LiveLife was unaware of the Escrow Agent's mistake and would never have consented to the escrow closing had it known about the Missing Deed.

34. On or about April 4, 2019, Afflalo filed a Chapter 7 Bankruptcy Petition, thereby commencing this bankruptcy proceeding as Case No. BK-S-19-12086-ABL. At the date of the Bankruptcy Petition, LiveLife held a first priority lien against the Property, as set forth in the LiveLife Deed of Trust and as affirmed and ratified by Afflalo in the Subordination Agreement.

35. Thereafter, in the bankruptcy proceeding, pursuant to this Court's Amended Order Re: Motion to Sell Real Property (the "Property Sale Order") entered on July 15, 2019 [ECF No. 89], the Property was sold for the sum of $3,376, 000.00 with all liens formerly against the Property attaching to the sale proceeds in their same order and priority.

36. The Property Sale Order provides in relevant part:

> THAT, as consideration for Bay Point and LiveLife agreeing to the Sale of the Property, their respective liens, if any, that were secured by the Property shall attach to the Proceeds of the Sale to the same extent, and with the same validity and priority, as they had, respectively, with regard to the Property.
> . . .
> THAT the Trustee shall hold all proceeds form the Sale in escrow or such other restricted account pending this Court's subsequent order to disburse such funds upon the resolution of Bay Point's and LiveLife's respective interests in such proceeds;

[ECF No. 89, Property Sale Order].

37. Currently, the Chapter 7 Trustee, Shelley D. Krohn, is holding approximately $3,376, 000.00 in proceeds from the sale of the Property in escrow (the "Sale Proceeds"), pending the Bankruptcy Court resolving Bay Point's and LiveLife's respective lien interests in the Property, and the respective priority of each, and rights to receive the Sale Proceeds.

38. A justiciable controversy now exists by and between Bay Point and LiveLife concerning the extent and priority of the respective liens against the Property held by LiveLife and Bay Point, and which party is entitled to the Sale Proceeds.

39. The Plaintiff has been required to hire an attorney to obtain the relief set forth herein and as a result, is entitled to its attorneys fees and costs incurred.

## FIRST CAUSE OF ACTION

**(Declaratory Relief / Lien Validity and Priority)**

40. Plaintiff repeats and realleges the allegations set forth in Paragraphs No. 1 through 39 of its Complaint and incorporates the same by this reference as if more fully set forth herein.

41. The LiveLife Deed of Trust constitutes a valid and enforceable lien against the Property.

42. Through the Subordination Agreement Afflalo created a lien against the Property on the terms of the LiveLife Deed of Trust and/or ratified the LiveLife Deed of Trust as a valid, first

GERRARD, COX & LARSEN
2450 St. Rose Parkway, Suite 200
Henderson, Nevada 89074
(702) 796-4000

priority lien against his Property, and affirmed that the LiveLife Deed of Trust "**shall . . . be and remain at all time a lien or charge on the property therein described, prior and superior to the Subordinate Deed of Trust lien in said order of priority**."

43. The Subordination Agreement is a valid contract, supported by good and valid consideration.

44. LiveLife, Bay Point and Afflalo are bound by the terms of the Subordination Agreement.

45. By operation of the Subordination Agreement, and the LiveLife Deed of Trust, LiveLife holds a first priority lien position against the Property, superior in priority and position to the Bay Point Deed of Trust.

46. LiveLife is entitled to a declaration that it holds a valid, first priority lien against the Property, superior to any claims or interests asserted by Bay Point to the Property, including the Bay Point Deed of Trust.

47. Because the LiveLife Deed of Trust constitutes a first priority lien against the Property, LiveLife is entitled to payment in full of its lien, including any and all attorney's fees incurred in defending the LiveLife Deed of Trust, from the Property Sale Proceeds currently being held in escrow by the Trustee. LiveLife is entitled to the full amount owed on the LiveLife Deed of Trust, including all principal, interest, costs, and fees.

48. The Plaintiff has been required to hire an attorney to obtain the relief set forth herein and as a result, is entitled to its attorneys fees and costs incurred.

**SECOND CAUSE OF ACTION**

**(Alternative Claim Under Bankr. Rule 7008(d))**

**(Equitable Subrogation/Declaratory Relief)**

49. Plaintiff repeats and realleges the allegations set forth in Paragraphs No. 1 through 48 of its Complaint and incorporates the same by this reference as if more fully set forth herein.

50. At the time LiveLife made the LiveLife Loan, LiveLife paid off the entirety of the amounts owed on the BOFI Loan to obtain a first priority lien against the Property, and reasonably

expected to receive a security interest in the Property with the same lien priority of the BOFI Deed of Trust which LiveLife fully satisfied.

51. LiveLife is subrogated to all of the rights of the BOFI Loan, the BOFI Deed of Trust, and is entitled to the lien priority and all associated rights of the BOFI Deed of Trust, including the power of sale to foreclose its subrogated position in the same manner as if it were the actual holder of the BOFI Deed of Trust, and the loan associated therewith.

52. LiveLife is entitled to a declaration that (i) it holds a first priority lien against the Property which is governed by the loan documents of the BOFI Loan; (ii) it is entitled to be equitably subrogated to the position of the BOFI Deed of Trust, to the extent of $2,331,057.46, plus the amount of any and all interest that has accrued since the date that LiveLife paid off the BOFI Loan, with such interest being determined in accordance with the terms set by the BOFI Loan documents (the "Equitable Subrogation Amount"); (iii) that the BOFI Deed of Trust was assigned to LiveLife by operation of law at the moment LiveLife repaid the BOFI Loan and remains a first priority lien against the Property in favor of LiveLife ("Equitably Subrogated Lien"); and (iv) LiveLife is entitled to have its Equitably Subrogated Lien paid as a first priority lien against the Property.

53. Bay Point will suffer no prejudice by the application of equitable subrogation because Baypoint's lien interest in the Property, via the Bay Point Deed of Trust, will be in the exact same position that it was before the refinance took place: junior to the pre-existing BOFI Deed of Trust.

54. The Plaintiff has been required to hire an attorney to obtain the relief set forth herein and as a result, is entitled to its attorneys fees and costs incurred.

### THIRD CAUSE OF ACTION

**(Equitable Estoppel)**

55. Plaintiff repeats and realleges the allegations set forth in Paragraphs No. 1 through 54 of its Complaint and incorporates the same by this reference as if more fully set forth herein.

56. Bay Point expressly acknowledged (through the Subordination Agreement) its understanding that LiveLife would not make the LiveLife Loan unless (i) the LiveLife Loan and

9

LiveLife Deed of Trust were secured by a first priority lien; and (ii) the Bay Point Deed of Trust was subordinated to the LiveLife Loan and LiveLife Deed of Trust. Bay Point also understood that the proceeds from the LiveLife Loan would be used to fully repay the BOFI Deed of Trust.

57. Bay Point represented to LiveLife and agreed (through the Subordination Agreement) that it was subordinating the Bay Point Loan and the Bay Point Deed of Trust to a new loan to be made by LiveLife in the amount of $3,150,000.00 and to a new lien against the Property in favor of LiveLife in the amount of $3,150,000.00.

58. Bay Point made the representations and agreements referenced in the preceding Paragraph with the intent that its conduct would be relied upon by LiveLife.

59. LiveLife relied to its detriment upon Bay Point's conduct and representations and in such reliance LiveLife issued and funded the LiveLife Loan in the amount of $3,150,000.00 and fully repaid the BOFI Loan and BOFI Deed of Trust in the amount of $2,331,057.46.

60. LiveLife made the LiveLife Loan to Afflalo in reliance upon Bay Point's representations and agreements that the Bay Point Loan and Bay Point Deed of Trust would be subordinate to the LiveLife Loan and LiveLife Deed of Trust.

61. Bay Point is estopped from asserting that the Bay Point Loan and Bay Point Deed of Trust are not subordinate to the LiveLife Loan and LiveLife Deed of Trust.

## FOURTH CAUSE OF ACTION

### (Alter Ego)

62. Plaintiff repeats and realleges the allegations set forth in Paragraphs No. 1 through 61 of its Complaint and incorporates the same by this reference as if more fully set forth herein.

63. Upon information and belief, there is such unity of interest in ownership between Defendants AP LLC and Afflalo that one is inseparable from the other.

64. Because of the conduct of Defendant AP LLC and Afflalo, as alleged herein, adherence to the fiction of separate entities would under the circumstances sanction a fraud or promote injustice.

/ /

/ /

65. Upon information and belief, Defendant AP LLC and Afflalo have treated the assets of the other as their own, have failed to observe corporate formalities, and/or have failed to properly capitalize the same.

66. Because of the unity of ownership interest between Defendant AP LLC and Afflalo, the actions and knowledge of each one of them are imputed to each other.

67. All of the assets and obligations of AP LLC should be treated as those of Debtor Afflalo and Afflalo's actions taken in executing the LiveLife Deed of Trust for AP LLC are in actuality Afflalo's actions.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. For an Order declaring that the LiveLife Deed of Trust constitutes a valid, first priority lien against the Property, that is in a senior priority position to the Bay Point Deed of Trust.

2. Alternatively, for an Order declaring that LiveLife is equitably subrogated to all rights of the BOFI Loan, BOFI Note, and BOFI Deed of Trust, up to the full amount paid by LiveLife to satisfy the BOFI Loan, plus interest, costs and attorneys fees accrued and/or incurred thereafter, and related thereto, which lien is senior to the Bay Point Deed of Trust.

3. For an Order prohibiting and estopping Bay Point from asserting that the Bay Point Loan and Bay Point Deed of Trust are not subordinate to the LiveLife Loan and LiveLife Deed of Trust.

4. For an Order declaring that all actions taken by Afflalo on behalf of AP LLC are actually actions taken by Afflalo individually because AP LLC is the alter ego of Afflalo.

5. For an Order instructing the Bankruptcy Trustee to pay LiveLife up to the full amount currently owed on the LiveLife Deed of Trust, plus interest, costs and attorneys fees accrued and/or incurred, and related thereto.

6. For attorneys fees and costs incurred in prosecuting this matter; and

7. For such other and further relief as the Court deems appropriate in the premises.

//

//

//

Dated this 16th day of August, 2019.

**GERRARD COX & LARSEN**

/s/ Douglas D. Gerrard
Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
John M. Langeveld, Esq.
Nevada Bar No. 11628
2450 Saint Rose Pkwy., Suite 200
Henderson, NV 89074
*Attorneys for* LIVE LIFE, LLC, a Wyoming limited liability company